UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA KING, as Personal
Representative of the Estate of Pauline
Ridenour, PATRICIA KING, MICHAEL
KRINKIE, and KEVIN RIDENOUR,

    Plaintiffs,

v.

WALLACE JOHN RIDENOUR, JR., GARY
D. MORGAN, WATERS & KRAUS, LLP
and JUDY MESSING STRUBLE,

    Defendants.
                                       /

Case No. 10-cv-11739

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING, IN PART, DEFENDANT
WATERS & KRAUS, LLP'S MOTION TO DISMISS** (docket no. 2)

This action involves, inter alia, claims for legal malpractice and breach of contract against Waters & Kraus, LLP ("Waters"), a Dallas-based law firm, with offices in Baltimore, Los Angeles, and San Francisco. Plaintiffs have also asserted various other claims against the other defendants. The matter comes before the Court on Waters's motion to dismiss. Waters contends that the Court lacks personal jurisdiction over it. Waters also contends that the complaint fails to state a claim for relief. For the reasons stated below, the Court grants the motion in part, and dismisses the claims against Waters for lack of personal jurisdiction.

**FACTS**

1. Underlying Dispute

Pauline Ridenour ("Pauline") resided in Michigan. She died intestate on July 14, 1999 from mesothelioma caused by second-hand contact with asbestos. Her son, Wallace Ridenour ("Wallace") (a defendant in this case), was appointed personal representative of

Pauline's estate by the Michigan probate court. Wallace decided to file a wrongful death action on behalf of the estate. On August 23, 1999, Wallace entered into a retainer agreement with the Law Offices of Roger G. Worthington, P.C. in Dallas, Texas for the purposes of filing a lawsuit on behalf of Pauline's estate. Then on October 19, 1999, Wallace and his siblings (Plaintiffs in this action) signed an addendum to the retainer agreement stating that Worthington was associating with Waters on the wrongful death action, and that the children agreed to the terms of the original retainer agreement with Worthington. The children also agreed that the attorneys would communicate solely with Wallace on all matters regarding the action, that Wallace would have full authority to settle any claims, and that the attorneys would disburse proceeds for any settlement equally to all children.

On January 5, 2000, Waters filed a lawsuit in a Texas state court against many asbestos-related defendants on behalf of Wallace individually and in his capacity as personal representative of the Pauline's heirs and her estate.

On March 7, 2000, Wallace filed a petition to open an unsupervised independent estate of Pauline Ridenour in the Livingston County, Michigan probate court. Waters asserts that it did not represent Wallace in this probate action, and there is no indication in the record that it did. Plaintiffs filed waiver/consent forms to the petition, demonstrating their consent to Wallace being named as the personal representative of their mother's estate. Wallace also filed an Acceptance of Trust as personal representative agreeing to file reports and perform all of his duties as required by law. None of the petitions or applications submitted to the probate court list any attorney's name in the space provided, let alone that of a Waters attorney.

On March 8, 2000, the Livingston County probate court issued Letters of Authority to Wallace, granting him full power to collect, manage and dispose of the property of the estate without court supervision. On July 9, 2003, the Livingston County probate court issued Wallace additional Letters of Authority,[1] and the siblings filed additional waiver/consent forms, indicating their consent to the issuance of new Letters of Authority. Like the petitions and applications, none of these letters of authority list any attorney's name in the space provided.

In June 2000, after the issuance of the first round of Letters of Authority, Wallace, through the Law Offices of John Ashmore, filed an action in the Dallas County probate court for Application for Ancillary Administration and Authorizing Ancillary Letters of Administration of the Ridenour estate. The probate court issued an order granting the application, authorizing ancillary letters of administration, and appointing Wallace as ancillary administrator of the estate.

The asbestos action apparently settled in phases. The proceeds of the first two settlement phases were divided equally among the children. But things changed, for reasons not clear from the parties' briefs. From 2003 through 2008, Wallace settled many of the asbestos-related claims against the various companies sued in that action. Each time, Wallace, with assistance of counsel other than Waters, filed a motion for approval of settlement in the Dallas county probate court seeking disbursement of the settlement to Wallace as personal representative of the estate. Plaintiffs assert that Waters caused the probate court's order to be styled so as to require disbursement solely to Wallace, despite having agreed with all the heirs that it would disburse the proceeds equally among them.

---

[1] The initial letters expired, thereby necessitating the second round of letters.

Waters advised Wallace that although the probate court had ordered disbursement solely to Wallace in his capacity as personal representative of the estate, Wallace was obligated to distribute the settlement proceeds among his siblings in accordance with the distribution agreement the children all signed. Wallace apparently never distributed funds from the later settlement phases to his siblings.

The siblings who received no proceeds from the later settlement phases sued Waters, Wallace, and Wallace's alleged boyfriend in state court in Livingston County, Michigan. Judy Messing Struble (a sibling), is named as a defendant though she is more properly considered a plaintiff, for Plaintiffs do not allege any wrongdoing on her part and instead allege that she was harmed by the actions of Defendants. Compl. ¶ 28.

2. Waters's Contacts with Michigan

Waters is a Dallas-based law firm that represents persons or their relatives who have been physically injured by exposure to asbestos. Plaintiffs assert in the body of their brief (but not by way of affidavit) that Waters has represented at least "five sets" of Michigan resident clients in the past 10 years, including Wallace Ridenour. In addition, Waters once represented a party in a lawsuit filed against Ford Motor Company outside of Michigan.

Waters, like most law firms today, has a website. The website includes an "Asbestos Exposure Locator," which is a map of the United States that list those physical locations across the United States, including in Michigan, where asbestos might be found. The website also contains a link to each federal bankruptcy, district, and circuit court, including those courts in the Eastern and Western Districts of Michigan. One attorney in the firm is licensed to practice before the U.S. District Courts for the Eastern and Western Districts of Michigan, although she was apparently admitted *pro hac vice* and made only one appearance in Michigan, and that was *before* joining Waters. Plaintiffs also assert that

4

Waters attorneys have met with two U.S. Senators from Michigan to discuss pending asbestos litigation bills in an attempt to influence federal law. Finally, Waters disbursed settlement checks to Wallace in Michigan.

That is the extent of Waters's contacts in Michigan. In support of its motion to dismiss, Waters has submitted an affidavit of one of its attorneys familiar with Waters' prior representations that includes the following averments: Waters does not have any offices, employees, personal property, or real estate in Michigan; Water has never commenced any litigation in any court in Michigan; Waters has never advertised in Michigan; its sole representation in Michigan involved an issue which was certified to the Michigan Supreme Court by a Texas appellate court, over Waters's objection, following a jury trial in a mesothelioma case filed in Texas; the wrongful death action giving rise to the instant action was filed and litigated in a state court in Texas; Waters did not represent any party before the Michigan and Texas probate courts. MacLean aff. ¶¶ 4-9. Plaintiffs have provided no affidavits that contradict these statements.

## DISCUSSION

There are two issues before the Court: 1) whether the Court has personal jurisdiction over Waters; and 2) whether Plaintiffs have stated claims for breach of contract and legal malpractice. Personal jurisdiction is a threshold issue, and the Court must address it first before considering the Rule 12(b)(6) challenge to the legal sufficiency of the complaint. *See Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002).

1. Personal Jurisdiction

   A. Legal Standard - Rule 12(b)(2)

The standard on a motion to dismiss for lack of personal jurisdiction depends on whether the district court holds an evidentiary hearing. When it does not hold one, a district

court may consider only the pleadings and affidavits on file and must consider them in the light most favorable to the plaintiff. *Bird*, 289 F.3d at 871. A court cannot weigh the controverting assertions of the party seeking dismissal. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). But, a court may consider the factual assertions of the defendant that do not controvert those of the plaintiff. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) ("[T]his court will not consider facts proffered by the defendant *that conflict with those offered by the plaintiff*." (emphasis added)). The plaintiff bears the ultimate burden of establishing personal jurisdiction over the defendant. *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). Dismissal is appropriate if all the specific facts alleged by the plaintiff collectively fail to state a prima facie case for the exercise of jurisdiction. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).

The parties requested neither preliminary discovery nor an evidentiary hearing on the jurisdictional issue. Accordingly, the Court proceeds solely on the basis of the specific facts alleged in the pleadings, motions, and affidavits on file.

B. <u>Analysis</u>

Waters challenges the Court's exercise of personal jurisdiction over it. Generally, a federal district court looks to the law of the forum state to determine whether it has personal jurisdiction. *Calphalon Corp v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). That is because the exercise of personal jurisdiction is valid only if the defendant's conduct is covered by the forum state's long-arm statute and the exercise of jurisdiction is consistent with due process considerations. *Id.* Because both requirements must be satisfied, if a court concludes that its exercise of jurisdiction over a defendant would offend notions of due process, there is no need to consider whether the conduct satisfies the forum state's

long-arm statute. Because the Court concludes that the exercise of personal jurisdiction over Waters violate would due process limitations, the Court provides no separate analysis of the application of Michigan's long arm statute.[2]

1. General Jurisdiction

Plaintiffs assert that the Court may assert general personal jurisdiction over Waters. The doctrine of general personal jurisdiction permits a court to exercise jurisdiction over a non-resident defendant in actions asserting claims having nothing to do with the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A.,*

---

[2] Many courts in Michigan conclude that Michigan's long-arm statute for specific jurisdiction extends to the limits of the due process clause, and therefore dispense with any analysis of the long-arm statute. Those courts have usually cited *Sifers v. Horen*, 385 Mich. 195 (1971) when doing so. Indeed, Waters takes this approach in his briefing as well. Def's Br. 8. This approach may be harmless if a court ultimately concludes that the exercise of personal jurisdiction would offend due process. But, at least in Michigan, if a court concludes that due process *is* met, the court must also separately consider whether the long-arm statute is satisfied. In some cases, even though the exercise of personal jurisdiction would comport with due process, a court's exercise of jurisdiction over the defendant would be improper because the conduct giving rise to the action does not meet the requirements of Michigan's long-arm statute. The Michigan Supreme Court's discussion in *Green v. Wilson*, 455 Mich. 342, 347-51 (1997) is instructive in this regard. There the court stated:

> The coextensive nature of Michigan's long-arm jurisdiction [and due process] becomes pertinent only if the particular acts or status of a defendant first fit within a long-arm statute provision. As the *Mallory* [*v. Conida Warehouses*, 113 Mich. App. 280 (1982)] Court implicitly concluded, *this does not mean that the two are equal and require a single inquiry based solely upon due process restrictions.*
>
> The provisions enumerated in § 705 would be superfluous if the Legislature intended that any activity that is constitutional also satisfy a long-arm statute. Furthermore, the Michigan Legislature could have written language into the statutes that confers jurisdiction to the broadest limits of due process, as other states have done. It chose not to do so.

*Id.* at 350-51 (emphasis added) (footnote omitted). Only because the Court finds that its exercise of jurisdiction over Water would offend notions of due process does the Court dispense with an application of Michigan's long-arm statute here.

7

*v. Hall*, 466 U.S. 408, 415 n.9 (1984). That is, a court may assert jurisdiction for *all* purposes.

A court has general jurisdiction over a non-resident defendant if the defendant's contacts with the forum state are "continuous and systematic." *See id.* at 415-16; *see also* Mich. Comp. Laws § 600.731(3) (authorizing general personal jurisdiction over a partnership where the partnership "carr[ies] on [ ] a continuous and systematic part of its general business within the [forum] state."). More specifically, general jurisdiction over a non-resident defendant comports with due process when the defendant's contacts with the forum state are of such a continuous and systematic nature that they "approximate[ ] physical presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta Natl. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *cited in Bird*, 289 F.3d at 874.

Two U.S. Supreme Court decision are instructive with respect to a court's power to exercise general jurisdiction over a non-resident defendant. The first is, as cited above, *Helicopteros Nacionales de Colombia, S.A., v. Hall*. There, the Supreme Court found that a Texas court's exercise of general jurisdiction over a foreign helicopter company (Helicol) exceeded the limits of due process. One of Helicol's helicopters crashed in Peru, resulting in the filing of a wrongful death action in a Texas state court. The parties conceded that the trial court lacked specific jurisdiction because the claim did not arise out of Helicol's contacts in Texas, and the Court proceeded to the issue of general jurisdiction. Helicol's contacts with Texas consisted of sending its CEO to Houston on one occasion to negotiate a contract, accepting checks drawn on a Houston bank, purchasing helicopters and equipment from a Texas manufacturer, and sending employees to training there. The Court found the contract negotiation insufficient, and the acceptance of the checks of "negligible significance." 466 U.S. at 416. It further found that mere purchases made in

that state, even if regularly occurring, were not enough to warrant general jurisdiction. Finally, the Court found the employee training was simply considered part of the package of goods and services purchased earlier, and therefore not sufficient to support a finding of general jurisdiction. *Id.* at 418.

The second Supreme Court case of *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), ruled that a state court could exercise general personal jurisdiction over a foreign defendant consistent with due process. There, the president and general manager of a Philippine mining company maintained an office in Ohio during the Japanese occupation of the Philippines. From that office, he conducted business on behalf of the company by maintaining the company's filings, carrying on correspondence relating to the business of the company and its employees, distributing salary checks for the company from two active accounts in Ohio, holding directors meetings, and working to rehabilitate the company's overseas property. The Court determined that the company had been carrying on a continuous and systematic, though limited, part of its general business in Ohio such that the exercise of jurisdiction over it by an Ohio court in an action raising claims unrelated to the contacts with the forum state was "reasonable and just." *Id.* at 445.

Considering the facts in this case and the standards and guidance set forth in *Helicopteros* and *Perkins*, the exercise of general personal jurisdiction over Waters here would violate due process limitations. Waters's contacts with Michigan fall well below the level necessary to demonstrate that it carries on business in a continuous and systematic fashion thereby approximating physical presence. It has no offices, employees, personal or real property in Michigan; it has never commenced any litigation in any court in Michigan; it has never advertised in Michigan, except insofar as it maintains a website accessible by

Michigan residents.[3] Its contacts with Michigan are minimal and fortuitous: it has lobbied in Washington, D.C. two U.S. Senators from Michigan regarding bills of national importance;[4] it has represented a few Michigan residents in the past (including Wallace Ridenour) who were all referred to Waters by other attorneys; and one of its attorneys is admitted on a limited basis to practice before federal courts in Michigan. These contacts fall well short of approximating a physical presence in Michigan. Accordingly, the Court lacks general personal jurisdiction over Waters.

---

[3] The website's accessibility to Michigan residents is insufficient by itself to establish general jurisdiction in Michigan. A website must *specifically* target a forum in order for it to serve as a basis for general jurisdiction. *See Henning v. Suarez Corp.*, --- F. Supp. 2d ----, 2010 WL 1817257, at *10 (E.D. Pa. May 4, 2010) (citing cases); *see also Bird*, 289 F.3d at 874 ("[T]he fact that Dotster maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction."). The website does not specifically target Michigan residents. Because it targets all states equally, it targets no state specifically.

[4] Plaintiffs cite *Shepard Invs. Int'l, Ltd. v. Verison Commc'ns Inc.*, 373 F. Supp. 2d 853 (E.D. Wis. 2005) for the proposition that lobbying inside the forum is sufficient to establish general jurisdiction in the forum. The court in *Shepard*, however, did not consider lobbying as a sufficient contact by itself to establish general jurisdiction. *Id.* at 865. Rather, it found that lobbying was one factor among many that it could consider. Furthermore, and more importantly, the court recognized a "fundamental difference" between lobbying activities before the federal government and lobbying activities before a state government. *Id.* With respect to the former, it stated:

> It makes sense to exclude a defendant's lobbying contacts with the federal government from a local court's personal jurisdiction analysis because when a defendant travels to the District of Columbia for purposes of petitioning the federal government, it intends to impact the federal government but not necessarily the forum itself.

*Id.* at 865-66.

Because Waters lobbied U.S. Senators from Michigan *in Washington, D.C.*, on an asbestos bill of national importance, there is no reason for the Court to consider these activities in its general jurisdiction analysis.

2. Specific Jurisdiction

Plaintiffs assert that even if the Court lacks general jurisdiction over Waters, it still has specific personal jurisdiction over the law firm. Again, for the reasons stated in note 2 above, the Court addresses only due process concerns. The Court's exercise of specific personal jurisdiction over Waters will comport with due process only if its contacts with Michigan satisfy the three-part test established by the Sixth Circuit in *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381.

"Purposeful availment" is the "constitutional touchstone" of specific personal jurisdiction and exists when a defendant's contacts with a forum state "proximately result from action by the defendant himself that create a substantial connection with the forum state, and where the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Neogen*, 282 F.3d at 889 (internal citations and alteration omitted). "'This . . . requirement ensures that a defendant will not be haled into a jurisdiction solely the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal quotation marks omitted). Purposeful availment is the *sine qua non* for personal jurisdiction. *Mohasco*, 401 F.2d at 381-82.

Plaintiffs do not assert that Waters's website, lobbying efforts, or prior representations of Michigan residents provides a basis for concluding that Waters purposefully availed itself of the privileges of acting in Michigan. Instead, Plaintiffs focus solely on their alleged attorney-client relationship and retainer contract with Waters in the estate's wrongful death action. Pl's Resp. Br. 10-15. Plaintiffs claim that Waters purposefully availed itself of the benefits of Michigan law when it entered into a retainer agreement with a Michigan resident (Wallace) to pursue a wrongful death action on behalf of the Estate of Pauline Ridenour. Plaintiffs also assert that they were parties to this contract.

Waters denies that it had an attorney-client relationship or contract with any children other than Wallace, but argues that even assuming it did have a relationship or contract with them, such contacts with Michigan are not sufficient bases for concluding that Waters purposefully availed itself of Michigan's laws. It relies primarily on the First Circuit's decision in *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995). In *Sawtelle*, the plaintiff was a New Hampshire resident who filed a malpractice action against the law firms that represented it in a wrongful death action filed in Florida. The plaintiff originally contacted a law firm in California who took the case and referred the matter to the firm's Washington, D.C. office. The D.C. office hired local counsel in Florida to file the lawsuit. The action later settled and the plaintiff subsequently learned that an action against the same defendant arising out of the same airplane accident was settled for a higher amount. Plaintiff sued all the attorneys and their law firms in a federal court in New Hampshire for negligence in settling the case for too low an amount. The defendant law firms and lawyers moved to dismiss for lack of personal jurisdiction. The district court granted the motion and the First Circuit affirmed.

On the issue of purposeful availment, the First Circuit stated:

> At the time they agreed to provide legal advice and representation to the plaintiffs, the defendants knew the Sawtelles were residents of New Hampshire. Defendants' contacts with New Hampshire, however, were limited to communicating with the clients in their home state. The wrongful death litigation was prosecuted in Florida, while other legal services were being rendered in Florida and other places outside New Hampshire. A review of the totality of the defendants' contacts with the forum state leaves us gravely doubtful that the defendants purposefully availed themselves of the benefits and protections of New Hampshire law.

*Id.* at 1391. After considering the defendants' telephone and written communications with the plaintiffs in the forum state, it found the contacts insufficient to demonstrate purposeful availment. With respect to the attorney-client relationship itself as a contact with the forum, the court concluded that "the mere act of agreeing to represent (and then representing) an out-of-state client, without more, does not suffice to demonstrate voluntary purposeful availment for the benefits and protections of the laws of the client's home state." *Id.* at 1394.

Though Waters does not cite the case in its briefing, the Eighth Circuit's decision in *Austad Co v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987), cited and discussed in *Sawtelle*, is also instructive. In that case, a South Dakota business hired a New York law firm to represent it in a patent dispute. The law firm filed a declaratory judgment action in Maryland. During the representation, the law firm sent an associate and a law clerk to South Dakota for three days to review a copy documents and gather information needed to answer discovery. The firm also made phone calls to the client in South Dakota, mailed bills there, and accepted payments from the client through checks drawn on a South Dakota Bank. The relationship later soured, and the law firm withdrew its representation. After the patent dispute settled, the client sued the law firm in federal district court in South Dakota for malpractice and breach of fiduciary duty. The district court dismissed the action for lack of personal jurisdiction and the Eighth Circuit affirmed. Recognizing the existence

of an attorney-client relationship between the resident client and non-resident law firm, the panel nevertheless concluded that the firm had not purposefully availed itself of South Dakota's laws in light of the following facts: the firm did not maintain an office there and none of its attorneys resided there or maintained a license to practice law there; the firm never advertised in South Dakota or sought business there; it did not actively seek out the client; the representation was arranged through a third-party who resided in New York and was a regular client of the firm; and the actions giving rise to the lawsuit took place in Maryland, not in South Dakota. In short, the court concluded, the firm's only "substantial connection" with South Dakota was its representation of a South Dakota corporation in connection with litigation taking place wholly outside South Dakota. *Id.* at 226-27. And the court reasoned that these connections were not enough to show purposeful availment.

Relatedly, under well-established precedent, the mere fact that a non-resident defendant enters into a contract with a forum resident is not, by itself, a sufficient basis for finding purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Kerry Steel, Inc. v. Paragon Indus. Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). Even simple correspondence and telephone calls to the forum that facilitate formation and performance of the contract are not enough. Such contacts are precisely the type of "random, fortuitous, and attenuated" contacts the Supreme Court has rejected as a basis for haling foreign defendants into court. *Kerry*, 106 F.3d at 151; *see Burger King*, 471 U.S. at 479.

In *Kerry*, for example, the Sixth Circuit rejected the contention that contract formation with a forum resident constituted purposeful availment. 106 F.3d at 152. There, the non-resident defendant, after having been solicited by the Michigan plaintiff, entered into a contract with a plaintiff to purchase steel coils. The purchase order was sent to the plaintiff

14

in Michigan. The defendant took possession of the coils in Indiana but then rejected them as non-conforming. The plaintiff sued the defendant in a federal court in Michigan. Agreeing that the district court lacked personal jurisdiction, the Sixth Circuit found that the defendant had not purposefully availed itself of Michigan simply by entering into a contract with the plaintiff and corresponding with it regarding formation and performance. The panel emphasized its view that the defendant had not "reached out" to Michigan to create the contract. *Id.* at 151.

Applying the above standards to this case, the Court concludes that Waters has not purposefully availed itself of the benefits and protections of Michigan. There is no dispute that Waters has no offices, partners, employees, or property in Michigan. It does not advertise in Michigan.[5] It has never once litigated in Michigan, except for when a Texas appellate court certified a question to the Michigan Supreme Court. But, even in that case, it cannot be said that Waters "reached out" to Michigan by being party to an action that involved one single issue certified to the Michigan Supreme Court. Waters opposed the certification.

Moreover, Waters's prior representation of Michigan plaintiffs in asbestos-related litigation cannot form the basis for purposeful availment in Michigan. The matters were all

---

[5] In the Court's view, the asbestos locator on Waters's website is not "advertising" sufficient to find purposeful availment. It is specific to no one state, and merely provides a public service of notifying interested persons of locations potentially containing asbestos. To find the locator sufficient advertising to constitute purposeful availment in Michigan would mean Waters has purposefully availed itself of the privileges of acting in all fifty states simply by its use of a website. This would be an odd result. But even if the locator was sufficient to establish purposeful availment, the second *Mohasco* factor would be absent because Plaintiffs' lawsuit has no connection at all with the locator. Wallace and Plaintiffs did not use the website locator in any way to find Waters. *See Bird*, 289 F.3d at 875 (second *Mohasco* factor requires that cause of action have a "substantial connection with the defendant's in-state activities.").

15

referred from other law firms and Waters never actively sought out the plaintiffs. In this case too, the matter was referred to Waters by another lawyer; Waters did not seek out the business. As in *Sawtelle* and *Austad*, where the mere representation of forum clients was considered insufficient to constitute purposeful availment in the forum, so too here is Waters's former representation of Wallace Ridenour and Plaintiffs (assuming a relationship existed) insufficient as well. And just as in *Kerry*, where the contract between the non-resident defendant and the plaintiff together with the facilitative correspondence was insufficient to establish purposeful availment, so too here is Waters's alleged retainer agreement with Plaintiffs insufficient.

In short, the record does not demonstrate that Waters reached out to Michigan in any way to represent Wallace and Plaintiffs in the wrongful death action. The matter was referred to Waters by another attorney in Texas who presumably was the one that reached out to Plaintiffs. It was irrelevant to the representation that Wallace and Plaintiffs were from Michigan. As far as the Court can tell, the fact that Waters and Wallace (and Plaintiffs) found one another was purely the function of the unilateral activity of Roger Worthington, and not the result of any efforts by Waters purposefully directed toward Michigan.

For these reasons, the Court holds that Waters has not purposefully availed itself of the benefits and protections of Michigan's laws. The absence of purposeful availment is fatal to the Court's exercise of specific personal jurisdiction over Waters. The Court therefore dispenses with any analysis of the remaining *Mohasco* factors, since even if they were met in this case, the Court would still lack personal jurisdiction over Waters because of the absence of purposeful availment.

Because the Court lacks personal jurisdiction over Waters, it will grant Waters's motion to dismiss insofar as the motion seeks dismissal of claims against Waters for lack

of personal jurisdiction. The Court expresses no opinion on the merits of Waters's motion insofar as the motion seeks dismissal of the claims against Waters for failure to state a claim for relief.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Defendant Waters's motion to dismiss (docket no. 2) is **GRANTED in part.** Plaintiffs' claims against Waters are dismissed for lack of personal jurisdiction.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 28, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 28, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager